IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIA DOVGIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 11 C 7883 |
| v. | ) |
| | ) |
| McDONALD'S CORPORATION, and, | ) Suzanne B. Conlon, Judge |
| McDONALD'S USA, LLC | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Aria Dovgin sues McDonald's Corporation and McDonald's USA, LLC (collectively "McDonald's") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 claiming employment discrimination on the basis of her race, national origin, and sex. McDonald's moves for summary judgment on all of Dovgin's claims. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Aria Dovgin is an Asian-American of South Korean national origin. Defs. Facts ¶ 3. She has masters degrees in computer science and business administration. Pl. Facts ¶ 1. She began working at McDonald's corporate headquarters in 1994. Defs. Facts ¶ 7. In 2004 she was promoted to manager, and the following year to senior manager. *Id.* Her experience has been in technology procurement. *Id.* ¶ 62.

In 2009, another senior manager, Frank Matagrano, began to supervise Dovgin. *Id.* ¶ 9. Matagrano prepared Dovgin's 2009 performance review. *Id.* ¶ 17. Out of a possible four points, he rated her performance a "2." Pl. Facts ¶ 14. The performance rating Matagrano gave her was lower than the "3" rating she received on her previous five performance reviews. *Id.* ¶ 9. In the performance review, Matagrano stated that Dovgin demonstrated a lack of strong communication skills. Defs. Facts ¶¶ 18, 20.

Dovgin's 2009 performance rating did not affect her salary, but did factor into her year-end bonus. *Id.* ¶ 22; Pl. Facts ¶ 18. Dovgin received half of her usual bonus and no stock options. Pl. Facts ¶ 18. In addition, she needed a supervisor's permission to apply for other jobs within McDonald's. *Id.* ¶ 7.

After obtaining permission from Matagrano, Dovgin applied for other positions within McDonald's. Defs. Facts ¶¶ 39, 57, 58. On March 2, 2009, she applied for the position of Manager/Director Product Category Leader. *Id.* ¶ 40, Pl. Facts ¶ 2. The notice of vacancy stated that corporate supply chain experience was required, and that supply chain experience related to food and an advanced degree were preferred. Defs. Facts ¶ 42; Pl. Facts ¶¶ 2, 3. McDonald's received more than 500 applications for the vacancy. Defs. Facts ¶ 41.

McDonald's hired two persons. *Id.* ¶ 43; Pl. Facts ¶¶ 2, 3. Jill Marquardt, who is white, was hired as Director, Product Category Leader. Defs. Facts ¶ 43; Pl. Facts ¶¶ 2, 3. She was Manager of Purchasing from 2001-07, and was promoted to be a director in 2007. Defs. Facts ¶ 45. She had experience in procuring food preparation equipment. *Id.* McDonald's hired Todd Silberg, who is white, as Manager, Product Category Leader. *Id.* ¶ 43; Pl. Facts ¶ 3. Silberg had

16 years' experience in the food industry outside of McDonald's, and had worked in food procurement. Defs. Facts ¶ 43. Neither had an advanced degree. Pl. Facts ¶¶ 2, 3.

On October 20, 2009, Dovgin applied for the position of Director, Packaging Strategic Sourcing. *Id.* ¶ 4; Defs. Facts ¶ 48. McDonald's received more than 480 applications for the position. Defs. Facts ¶ 49. McDonald's hired Jeffrey Wayman, who is white, to fill the vacancy. Pl. Facts ¶ 4; Defs. Facts ¶ 53. Wayman had served as a Senior Manager for 6 years longer than Dovgin, and his experience was strategic in nature, including working in McDonald's U.S. Strategy group. Defs. Facts ¶ 53.

On February 19, 2010, Dovgin applied for the position of Sourcing Manager. *Id.* ¶ 54; Pl. Facts ¶ 5. The notice of vacancy stated that an MBA would be preferred. Pl. Facts ¶ 5. McDonald's received more than 275 applications for the vacancy. Defs. Facts ¶ 56. McDonald's hired Cathy Arvanitis, who is white, to fill the position. *Id.* ¶ 59; Pl. Facts ¶ 5. Arvanitis had more than 15 years' procurement experience, including labor procurement. Defs. Facts ¶¶ 60, 62. In addition, she had six years' experience as a procurement director. *Id.* ¶ 60. She did not have an MBA. Pl. Facts ¶ 5.

Dovgin asserts that she also asked to be considered for an unposted director's position that McDonald's offered to a different applicant. Pl. Facts ¶ 6. However, the only evidence she cites to support her assertion that she applied is the Notice of Deposition Pursuant to Rule 30(b)(6) served on McDonald's, and deposition testimony from the Rule 30(b)(6) witness. *Id.* Neither discuss Dovgin applying for an unposted director's position. Accordingly, the statement of fact is disregarded. *Hunter v. Jewel-Osco*, No. 11 C 8967, 2013 WL 53894, at *2 n.2 (N.D. Ill. Jan. 3, 2013) (Kocoras, J.) (assertions unsupported by record evidence may be disregarded).

3

On August 31, 2010, Dovgin submitted a letter of resignation. Defs. Facts ¶ 66. Her last day of work was September 13, 2010. *Id.* Before resigning, Dovgin accepted a position at the University of Chicago. *Id.* ¶ 70. She started her new job on September 20, 2010. *Id.* ¶ 71. When she resigned from McDonald's, Dovgin's annual salary was $105,000, before bonuses and stock options. *Id.* ¶ 69. At the University of Chicago, she earned $140,000. *Id.* ¶ 71.

On September 28, 2010, Dovgin cross-filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. Fourth Am. Compl. Ex. 2 at 2. She received a right-to-sue letter dated August 1, 2011, and filed this suit on November 5, 2011. *Id.* at 1. In her fourth amended complaint, she alleges the following claims: (a) race, national origin, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I); (b) race discrimination in violation of 42 U.S.C. § 1981 (Count II); and (c) age discrimination in violation of the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (Count III).

Before the court is McDonald's motion for summary judgment on Dovgin's claims of race, national origin, and gender discrimination. Dovgin has voluntarily dropped her claim of age discrimination. Dkt. 74 at 17 ("Dovgin abandons her age discrimination claim.").

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and McDonald's is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). McDonald's bears the initial burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S.

4

317, 323 (1986). If satisfied, this burden shifts to Dovgin to go beyond the pleadings and present specific facts that show there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in Dovgin's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). In considering the motion, all facts and reasonable inferences are viewed in the light most favorable to Dovgin. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Dovgin brought her claim of race discrimination under both 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e *et seq*. Race claims under § 1981 and Title VII are analyzed identically, and so the court will not distinguish between the two. *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) ("The substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981.").

## II. Indirect Method

A plaintiff may prove discrimination under either the direct or indirect method. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). Dovgin attempts to prove discrimination under each method. The court begins with her efforts under the indirect method.

Dovgin relies on the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Dovgin must first establish a *prima facie* case of discrimination by showing: (1) she is a member of a protected class; (2) she reasonably met the legitimate job expectations of McDonald's; (3) McDonald's took an adverse employment action against her; and (4) McDonald's treated her differently than similarly-situated persons outside her protected class. *Id.* at 802; *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d

744, 750–51 (7th Cir. 2006). If Dovgin satisfies her burden, McDonald's must articulate a legitimate, nondiscriminatory reason for its actions. *Burks*, 464 F.3d at 751. If it does, Dovgin must show that the explanation is pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Burks*, 464 F.3d at 751.

McDonald's does not dispute that, as an Asian-American woman of South Korean national origin, Dovgin is a member of a protected class. It also does not dispute that she was meeting its legitimate job expectations. But it argues she cannot establish a *prima facie* case of discrimination, or that its conduct was a pretext for discrimination.

### A. Performance Review

#### 1. Adverse Employment Action

McDonald's argues that Dovgin's 2009 performance review did not affect her pay or otherwise impact her job, and therefore was not an adverse employment action. A negative performance evaluation, unaccompanied by a tangible job consequence, is not an adverse employment action. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010); *Smart v. Ball St. Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) ("But [the plaintiff] has not identified, nor have we discovered, a single case where adverse performance ratings alone were found to constitute adverse action."). Dovgin argues that she suffered a tangible job consequence because she did not receive the full year-end bonus and stock options she had received in previous years. However, the loss of a discretionary bonus is not an adverse employment action. *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). Nor can she show the need to obtain permission to apply for a promotion was an adverse action because she received permission. Accordingly, she has not established that her 2009 performance evaluation was an adverse employment action.

6

## 2. Similarly-Situated Employees

Even if she had established an adverse employment action, she could not show that similarly-situated employees were treated more favorably. A coworker is similarly-situated if directly comparable to the plaintiff in all material respects. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). The court must look at all relevant factors, including whether the employees "dealt with the same supervisor" and were "subject to the same standards." *Id.* at 617-18.

Dovgin contends that Matagrano was treated more favorably because he received a perfect "4" on his performance review, even though he used foul language and exhibited inappropriate conduct. Pl. Facts ¶ 11. However, Dovgin cannot show that Matagrano was similarly-situated. At the time of the 2009 performance evaluation, Matagrano supervised Dovgin and prepared her evaluation. Matagrano's more favorable evaluation was prepared by Senior Director Laura Kohl. *Id.* ¶ 14, 17. Because their performance evaluations were prepared by different supervisors, Dovgin cannot show that she was similarly-situated to Matagrano. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) ("It is clear that Meyer was not similarly situated to Patterson because they reported to different supervisors."); *see also Taylor v. Eli Lilly & Co.*, No. 10 C 1611, 2012 WL 4467655, at *7 (S.D. Ind. Sept. 26, 2012) ("Because [a coworker's] Performance Management review, which was the basis for obtaining merit pay, was completed by a different supervisor than the one who completed [the plaintiff's, the plaintiff] cannot show meaningful similarity to [the coworker].").

### 3. Pretext

Even if Dovgin had established a *prima facie* case of discrimination, she could not show pretext. To establish pretext, Dovgin must show that the reason given for her low performance rating—her inadequate communication skills—are unworthy of belief. *Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004). Pretext must be "more than just faulty reasoning or mistaken judgment;" it is a lie—a phony reason. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838–39 (7th Cir. 2009).

Dovgin contends that she established pretext with evidence that Matagrano's supervisor directed him to criticize Dovgin because of her "cultural differences." Pl. Facts ¶ 17. The supervisor made the statement in Matagrano's performance review:

> Frank appears tentative to give Aria critical feedback unless given via email. Since Aria was a peer of Frank's and has cultural differences, I challenge Frank to think about how he can work with her in a different way to grow her skills and the perception of her work within US IT. She's a tougher case than Michelle, but has potential to fill a larger role on the team.

Pl. Facts Ex. 4 at 4. Dovgin argues that the phrase "cultural differences" is evidence of discriminatory animus.

Viewed in context, the quoted statements direct Matagrano to help Dovgin succeed by growing her skills, creating a favorable perception of her, and helping her fill a larger role within McDonald's. The statement does not direct Matagrano to sabotage Dovgin by falsifying grounds for a low performance rating. Because the statement is not evidence of discriminatory motive, it does not establish pretext.

Dovgin also attempts to establish pretext with evidence that other supervisors had given her higher ratings in the past, and stated that they would have rated her higher than Matagrano did. Pl. Facts ¶¶ 9, 15. However, evaluations given by different supervisors do not establish pretext because "'[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important.'" *Smith v. Allstate Ins. Co.*, No. 99 C 906, 2002 WL 4853874, at *20 (N.D. Ill. Mar. 29, 2002) (Nolan, Mag.) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002)).

Dovgin has failed to establish her performance review was an adverse employment action, that similarly-situated employees were treated more favorably, or that the reasons for the performance review were pretextual. For these reasons, she cannot establish under the indirect method that her performance review was discriminatory.

### B. Failure to Promote

#### 1. Similarly-Situated Employees

McDonald's argues that Dovgin cannot show that she was similarly-situated to the employees hired for the promotions she sought. To establish a *prima facie* case for a failure to promote claim, Dovgin must show she was as qualified for the open positions as the persons hired. *Grayson v. City of Chicago*, 317 F.3d 745, 749 (7th Cir. 2003). The persons hired each had more experience either at McDonald's or in food procurement than Dovgin, whose experience was limited to technical procurement. For instance, when McDonald's hired Jill Marquardt to be Director, Product Category Leader, she had two years' experience as a director for McDonald's, while Dovgin had none. When Todd Silberg was hired as Manager, Product Category Leader, he had experience in food procurement, which Dovgin did not. When

9

McDonald's hired Jeffrey Wayman to be Director, Packaging Strategic Sourcing, he had six years' more experience as a senior manager at McDonald's than Dovgin. When McDonald's hired Cathy Arvanitis to be Sourcing Manager, she had six years' experience as a director and experience in labor sourcing, which Dovgin lacked.

Dovgin contends that she was more qualified for the positions because she had two advanced degrees, while the candidates hired had no advanced degrees. Although an advanced degree was listed as preferred on some of the vacancy announcements, it was never listed as a requirement. In any event, courts do not second-guess personnel decisions, such as McDonald's decision to favor work experience over advanced degrees. *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) (courts are not super-personnel departments reviewing the soundness of promotional decisions). Because the candidates had more experience than Dovgin, she cannot show that she was similarly-situated to them, and thus cannot establish a *prima facie* case of discrimination.

### 2. Pretext

Even if Dovgin had set out a *prima face* case for her failure to promote claim, she has not established pretext. To establish pretext, Dovgin must do more than show that McDonald's decision to favor experience over education was wrong—she must show that McDonald's did not honestly believe that candidates with more experience were better suited for the vacancies than Dovgin. *Bottoms v. Ill. Dep't of Human Servs.*, 174 F. Supp. 2d 758, 767 (N.D. Ill. 2001) (Conlon, J.). Dovgin has failed to identify any evidence that McDonald's did not honestly believe it was hiring the more qualified candidate. Dovgin's only evidence that she was the better candidate is her own subjective beliefs, which is inadequate to establish discrimination.

10

*Hall v. River Forest, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008) ("an employee's own subjective belief that she is as qualified or more qualified than another applicant is insufficient").

Dovgin has failed to establish that McDonald's promoted or hired similarly-situated employees over her, or that McDonald's promotion decisions were a pretext for discrimination. For these reasons, she cannot establish under the indirect method that McDonald's failure to promote her was discriminatory.

### C. Constructive Discharge

McDonald's argues that Dovgin cannot show she was constructively discharged because she voluntarily resigned. To establish a constructive discharge, Dovgin must show that her working environment was so unbearable as a result of unlawful discrimination, a reasonable employee would have quit. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). The work conditions must be even more egregious than the conditions that create a hostile work environment. *Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864–65 (7th Cir. 2011).

Dovgin contends that her environment was sufficiently hostile because Matagrano constantly cursed, was unstable and unpredictable, and wrote in her performance review that "2010 will be a pivotal year," which she took as a threat to her continued employment. Dovgin's evidence is insufficient to establish constructive discharge. Dovgin has identified no evidence that Matagrano's conduct concerned her race, national origin, or gender. To the contrary, she contends he was boorish around everyone, including vendors. Defs. Facts ¶ 12. Dovgin cannot establish a constructive discharge based solely on boorish conduct, such as the use of vulgar language. *Armintrout v. Bloomingdale's Pizza, Inc.*, No. 04 C 313, 2007 WL 837279, at *12 (N.D. Ill. Mar. 13, 2007) (Filip, J.) (use of vulgar and sexually explicit language in workplace

11

unrelated to plaintiff's gender was not so egregious to lead a reasonable employee to quit).

Matagrano's alleged threat was also insufficient to establish a constructive discharge. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("a working condition does not become intolerable or unbearable merely because a prospect of discharge lurks in the background.") (internal quotation marks and citation omitted).

Dovgin has failed to identify evidence of discriminatory conduct so egregious as to support a claim of constructive discharge, and thus cannot establish such a claim under the indirect method of proof.

### D. Disparate Impact

McDonald's contends that Dovgin cannot establish a claim of disparate impact because: (1) she has not identified the practice she contends impacted her protected class; and (2) she has not identified statistics showing a disparity. To establish a *prima facie* case, Dovgin must identify a particular employment practice that disparately impacts the protected class. 42 U.S.C. § 2000e–2(k); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). The plaintiff must also "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.* at 994–95.

If Dovgin establishes a *prima facie* case, the burden shifts to McDonald's to show that the practice is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A); *Puffer*, 675 F.3d at 717. If the employer succeeds, "the burden shifts

12

back to the plaintiff to show that an equally valid and less discriminatory practice was available that the employer refused to use." *Puffer*, 675 F.3d at 717.

Dovgin has identified the practice she argues disparately impacted Asian-American employees. She contends in 2009, McDonald's stopped requiring supervisors to base performance reviews on documented facts and, instead, allowed supervisors to rate employees based on subjective opinions. Pl. Facts ¶ 8. According to Dovgin, the change led to low performance ratings for at least six Asian-American employees.

But Dovgin has not identified a baseline needed to make meaningful comparisons. For instance, she has not identified the total number of Asian-American employees, the total number of McDonald's employees, and whether employees outside her protected class also received low performance ratings after the alleged new practice. The only statistic she has offered is that the practice adversely affected "at least 6 employees out of 100, or 6%." Response at 16. But she has not identified whether the group of 100 consists of all the Asian-American employees, or all McDonald's employees. Without a basis of comparison, Dovgin's anecdotal evidence that six Asian-American employees received low performance ratings "tells us nothing about the presence or absence of discriminatory practices." *Ibarra v. Martin*, 143 F.3d 286, 291 (7th Cir. 1998). For these reasons, Dovgin has failed to establish a *prima facie* case in support of her disparate impact claim.

## II. Direct Method

To prove discrimination under the direct method, Dovgin may rely on direct evidence, such as an admission. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012). Dovgin argues that the phrase "cultural differences" in Matagrano's performance review

is direct evidence of McDonald's discriminatory animus. However, as detailed above, the phrase was used in the context of providing Matagrano guidance on how to support Dovgin, allow her to grow her skills, and help her take on a larger role within McDonald's. The statement was not used to direct Matagrano to sabotage Dovgin's career. For the same reasons the phrase does not establish pretext, it is not direct evidence of discrimination.

Alternatively, Dovgin may rely on circumstantial evidence that creates a convincing mosaic supporting an inference of discrimination. *See id.* Dovgin contends that she has created a convincing mosaic with the following evidence: (1) McDonald's promoted Marquardt, Silberg, Wayman, and Arvanitis but not her despite her superior qualifications; (2) Matagrano received a better performance evaluation despite his use of vulgar language; (3) Matagrano's review of Dovgin's performance was a pretext for discrimination because a coworker falsely stated that Dovgin always missed deadlines; and (4) the 2009 performance review contained the following ambiguous comment: "Michelle [] was taken from Aria's management because of her inability to effectively train Michelle through a complex RAP exercise." Pl. Facts Ex. 2 at 10.

As discussed above, the fact that McDonald's favored the relevant experiences amassed by Marquart, Silberg, Wayman, and Arvanitis over Dovgin's advanced degrees is not evidence that McDonald's discriminated against Dovgin based on her race, national origin, or gender. *See Stephens*, 569 F.3d at 788 (courts are not super-personnel departments). Also as discussed above, the superior performance rating Matagrano received is not evidence of discrimination because his report was prepared by a different supervisor. *Patterson*, 281 F.3d at 680.

Dovgin has not shown that Matagrano's reasons for the performance rating he gave her were based on a coworker's false statement that she missed deadlines and, therefore, pretextual.

14

After Dovgin received Matagrano's review, she submitted a rebuttal. Defs. Facts ¶ 28. While investigating the rebuttal, Human Resources Partner Carol Davis interviewed Patrick Phalen, who told Davis that Dovgin missed deadlines. Pl. Facts ¶ 18. The statement was made after Matagrano had reviewed Dovgin and, therefore, Matagrano could not have used the statement to falsify a basis for Dovgin's performance rating. Accordingly, Phalen's statement, even if false, is not connected to Matagrano's performance review and, therefore, not evidence that the review was pretextual.

As for the allegedly ambiguous statement in her performance review, Dovgin does not explain how the statement supports an inference of discrimination. Instead, she merely cites to deposition testimony from her former supervisor, Stephen Novotny, who found the statement to be lacking "specifics," such as how Dovgin could have done a better job. Novotny Dep. (attached to Pl. Facts) at 65. Undeveloped arguments unsupported by citations to relevant evidence are forfeited. *White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009).

Because she failed to identify direct evidence of discrimination, or circumstantial evidence creating a convincing mosaic from which discrimination could be inferred, Dovgin cannot prove discrimination under the direct method.

## CONCLUSION

McDonald's motion for summary judgment is granted. McDonald's is entitled to judgment on Count I for race, national origin, and sex discrimination and Count II for race discrimination because she has failed to establish a *prima facie* case or pretext under the indirect method of proof, and has not identified direct evidence or created a convincing mosaic of

15

circumstantial evidence of discrimination. McDonald's is entitled to judgment on Count III for age discrimination because Dovgin has abandoned the claim.

ENTER:

April 22, 2013

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge